UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL BRATT and MARJORIE YOUMANS,

    Plaintiffs,

v.                                                                        Case No: 8:13-cv-3210-T-36AEP

LOUIS GENOVESE, STEVEN GEORGE, KENNETH VAN TASSEL and JOHN GORE,

    Defendants.
_____/

## ORDER

This cause comes before the Court upon the Defendants' Motions to Dismiss. Defendant Kenneth Van Tassel seeks to dismiss Counts VI, VII, and IX of the Complaint (Doc. 5), and Defendants Steve George, John Gore, and Louis Genovese seek to dismiss Counts VII and IX of the Complaint (Docs. 9, 13, and 17). Plaintiffs Michael Bratt and Marjorie Youmans responded in opposition to each of these motions (Docs. 21, 22, 23, and 24). The Court, having considered the motions and being fully advised in the premises, will grant-in-part and deny-in-part Defendants' Motions to Dismiss.

**I.**        **STATEMENT OF FACTS**[1]

This case arises from plaintiffs Michael Bratt and Marjorie Youmans' encounter with defendants, who, at the time of the incident, were all deputies of the Hernando County Sherriff's Office. At around 1:30 am on December 26, 2009, Deputy George responded to a noise complaint

---

[1] The following statement of facts is derived from Plaintiff's Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motions to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

in Bratt and Youmans' neighborhood.  After meeting with the complainant, Bratt and Youmans' neighbor, George climbed the fence which completely enclosed the property of the Bratt residence and, in the dark, knocked on the door.  Upon determining that a Hernando County Sheriff's Officer was at the door, Bratt cracked the door open and asked George what he wanted.

After George refused to explain why he was present, Youmans, who had been awakened by the knocking, began yelling at George and approaching him.  Bratt restrained her.  At that point, George yelled "domestic battery" and attempted to force his way into the Bratt residence.  Bratt blocked the door with his foot, so George reached around the door and tasered him, causing him to fall backwards.  As a consequence, George, who had been leaning on the door, fell forwards and struck his nose on the floor or wall, causing him to bleed.  In a panic, George radioed for backup, saying that he was "shot" and/or "down."  George then pursued Bratt into the house, at which point Bratt agreed to be handcuffed by George.

While Bratt was lying handcuffed on his living room floor, Deputy Van Tassel arrived and dragged him outside.  There, Van Tassel and Deputy Genovese proceeded to beat him, shattering his orbital bone and causing his eye to fall into his cheek cavity.  During the beating, Youmans attempted to advise the officers that Bratt had medical problems with his back.  In response, Van Tassel ordered Youmans arrested for obstruction.  Deputy Gore then arrested Youmans, who was not resisting and non-violent, by pushing her roughly into the front of her house.  Bratt was eventually placed in Genovese's police car to be transported to the hospital, but before reaching the hospital, Genovese stopped the vehicle and again assaulted him.

Thereafter, the deputies held a special meeting to discuss the incident.  The taser that George had used on Bratt went unaccounted for for five days, and when it was finally turned over,

the data file had been corrupted.  All of the officers denied striking Bratt in the face, but none could explain how Bratt had suffered such brutal injuries.

Bratt was acquitted of all criminal charges and the obstruction charge against Youmans was dismissed by the court. Subsequently, on December 23, 2013, plaintiffs filed a nine count complaint asserting eight claims under 42 U.S.C. § 1983 and one state law claim for loss of consortium.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Furthermore, mere naked assertions are not sufficient.  *Id*.  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id*.

## III.    DISCUSSION

Qualified immunity protects government officials performing discretionary functions from suit unless their conduct violates a clearly established statutory or constitutional right.  *See Brannon v. Finkelstein*, 754 F.3d 1269, 1278 (11th Cir. 2014).  In evaluating whether qualified immunity applies, a court determines (1) whether the facts alleged make out a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the alleged

misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A court has the discretion to address the two prongs of the analysis in either order. *See id.* at 236.

    **A.**    **Count VI: False Arrest**

In Count VI, Youmans alleges that Van Tassel caused her false arrest by ordering her arrest without probable cause. Van Tassel argues that Youmans has failed to state a claim because she failed to allege that he physically participated in her arrest or that he was a part of the chain of command that authorized her arrest. However, while such a showing is required at the summary judgment stage, *see Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010), Youmans was not required to allege this level of specificity in her pleadings. *Andre v. Castor*, 963 F. Supp. 1158 (M.D. Fla. 1997), *aff'd in part, rev'd in part by* 144 F.3d 55 (table) (11th Cir. 1998), is analogous. There, the plaintiff alleged that two defendants had "assisted" another in stopping her exhibition, in violation of her Constitutional rights. *See id.* at 1164. The two defendants moved to dismiss for failure to adequately plead causation, but this Court rejected their arguments. *See id.* at 1164-65. In so doing, it held that, although the word "assist" was conclusory, the actions of the three defendants could "fairly be read to be in concert," and that there was "sufficient factual detail in the complaint to notify these defendants of the nature of the constitutional claims against them and frame an argument with regard to qualified immunity . . . ." *Id.* at 1165.

The same applies here. The complaint clearly alleges that Van Tassel "ordered" Youmans' arrest, thereby participating in the arrest. And, indeed, Youmans' use of the word "order[]" presupposes that Van Tassel had such authority. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990) (noting that, in evaluating a motion to dismiss as opposed to a motion for summary judgment, "general allegations embrace those specific facts that are necessary to support the claim"). Whether Van Tassel had the authority to order Gore to arrest Van Tassel is not discernible

4

from the four corners of the complaint and is best determined at the summary judgment stage of this litigation. Further, Van Tassel does not suggest that he lacks notice as to the nature of the constitutional claim against him. Youmans' allegation that Van Tassel "order[ed]" her unlawful arrest thus adequately pleads a claim for false arrest and a violation of a constitutional right which was clearly established at the time of the alleged misconduct. Therefore, at this stage of the litigation, Van Tassel is not entitled to qualified immunity. Accordingly, Van Tassel's motion to dismiss as to Count VI is denied.

      **B.**      **Count VII: Hindering Access to Courts**

In Count VII, Bratt alleges that each of the four defendants unconstitutionally hindered his access to courts by covering up their use of excessive force against him. Each of the defendants' arguments as to this Count are identical—that they are entitled to qualified immunity on this Count because Bratt did not allege sufficient facts to establish that the cover up succeeded.

A plaintiff is entitled to recover under § 1983 for a cover up that impedes his or her First Amendment right to adequate, effective, and meaningful access to the courts. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008). In order to state a cognizable claim, however, a plaintiff must allege more than just the mere existence of a cover up—at a minimum, a plaintiff must allege that the cover up successfully impeded his or her access to the courts in some way. *See Connor v. Halifax Hosp. Med. Center*, 135 F. Supp. 2d 1198, 1224 (M.D. Fla. 2001).

Bratt has failed to allege that the cover up successfully impeded his access to the courts. Although he suggests in his opposition brief that "[his] ability to sue for various state law claims was fatally delayed . . . based on the defendants' false police reports," no such allegations of delay appear in his pleadings. Moreover, the circumstances underlying Bratt's claims for excessive force have been known to him from the start. *Accord Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423

(7th Cir. 2000). Accordingly, Count VII fails to state a claim for hindering access to the courts, and, thus, a violation of a constitutional right. Therefore, the defendants' motions to dismiss will be granted, as they are entitled to qualified immunity as to Count VII.

### C. Count IX: Loss of Consortium

Count IX is a claim by Youmans against Genovese, George, and Van Tassel[2] for the loss of consortium arising from the injuries they allegedly inflicted on Bratt. Each of the defendants argues identically that this claim should be dismissed because it is a state derivative claim and Bratt has not pleaded a state law claim against any of the defendants. Each of the defendants also argues that this claim cannot derive from Bratt's alleged constitutional deprivations because federal law does not recognize consortium claims for the alleged civil rights deprivations of others.

A claim for loss of consortium is derivative—that is, it is actionable only if the plaintiff can demonstrate that the defendant is liable to his or her spouse in tort. *See Gates v.* Foley, 247 So. 2d 40, 45 (Fla. 1971). The law is unsettled, however, as to whether a loss of consortium claim may survive if the tortiously injured spouse has claims under only § 1983. In particular, the Eleventh Circuit has yet to decide this issue. *See Crawford v. City of Tampa*, 397 Fed. App'x 621, 624 n.1 (11th Cir. 2010).

As defendants note, this Court in the past has rejected arguments that a loss of consortium claim may derive directly from federal civil rights violations or state law claims that have not been alleged. *See Cook v. Robert G. Waters, Inc.*, Case No. 96-cv-1459, 1996 WL 685842, at *1 (M.D. Fla. Nov. 13, 1996). More recently, however, other courts and this one have declined to dismiss loss of consortium claims even in the absence of a formal state law claim upon which the tortious

---

[2] Although "all defendants" is listed under the heading of this claim, Youmans does not name Gore in the claim itself. The Court will thus dismiss this count as to Gore, since the pleadings do not state a cause of action against him.

element of the loss of consortium claim is presumably premised. *See, e.g.*, *Horst v. Parker*, Case No. 6:07-cv-612, 2007 WL 4234616, at *3 (M.D. Fla. Nov. 29, 2007) (refusing to dismiss a wife's loss of consortium claim because it "can be construed as a derivative of [her husband's] Section 1983 claim"); *Crawford v. City of Tampa*, Case No. 8:08-cv-927, 2009 WL 64905, at *2 (M. D. Fla. Jan. 9, 2009) (refusing to dismiss a loss of consortium claim that accompanied only claims brought under federal civil rights statutes, finding it "beneficial to permit the consortium claim to proceed to resolution on the merits"), *aff'd in part, rev'd in part by* 397 Fed. App'x 621; *Hoelper v. Coats*, Case No. 8:10-cv-1324, 2010 WL 4292310, at *6 (M.D. Fla. Oct. 27, 2010) (holding that, because "[plaintiff's] § 1983 claim for malicious prosecution survives Defendants' motions to dismiss, [her husband's] loss of consortium can be sustained as a derivative claim").

Particularly instructive is *Kinzer v. Metropolitan Gov't of Nashville*, 451 F. Supp. 2d 931 (M.D. Tenn. 2006), which involved a three-count complaint consisting of two claims under § 1983 and a claim for loss of consortium. The defendant filed a motion to dismiss the loss of consortium claim on the grounds that it was "not cognizable under § 1983," *id.* at 932, but the court denied the motion, holding that, although a state loss of consortium claim could not be brought *under* § 1983, it could be brought as a pendent state law claim *alongside* the § 1983 claim, *see id.* at 947. In so holding, the court reasoned that "§ 1983 does not preempt other state causes of action premised upon the same conduct . . . . It would make no sense logically to bar a wife's loss-of-consortium claim where her husband brings only a § 1983 claim, but to allow it where he also brings a claim for assault and battery, given that all these causes of action arise from the exact same set of facts and injuries." *Id.* at 945-46. The court then noted that "to allow a wife or husband to recover under her or his own state cause of action for loss of consortium resulting from injuries to the spouse, while not expressly cognizable under federal law, is not barred by it either." *Id.* at 946.

The court thus concluded that "[b]ecause Tennessee law permits a wife to maintain an action for loss of consortium against a tortfeasor who has caused injury to the husband, a derivative claim for loss of consortium is available in the context of [a] § 1983 action brought by a person whose constitutional rights were violated in such a manner as to cause him personal injury." *Id.* at 946-47.

The Court is accordingly of the belief that it would not be appropriate to dismiss Youmans' claim for loss of consortium at this stage of the litigation. To begin with, Florida law authorizes a separate claim for loss of consortium,[3] so Bratt's failure to formally plead a state law claim is not entirely dispositive. Indeed, under Florida law, a spouse may have an actionable loss of consortium claim against a defendant even after the resolution of the underlying cause of action against that defendant. *See Resmondo v. Int'l Builders of Fla., Inc.*, 265 So. 2d 72, 73-74 (Fla. 1st DCA 1972). Next, the facts pleaded in Bratt's § 1983 claims provide an adequate basis for tort liability under Florida state law. *See City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3rd DCA 1996) ("If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery."); *accord Pattee v. Ga. Ports Auth.*, 477 F. Supp. 2d 1272, 1277 (S.D. Ga. 2007) ("the Court must determine whether . . . the [state] court would have allowed a loss of consortium claim alleging a spouse's federal § 1983 claim as the first element"). The Court thus concludes that it may exercise supplemental jurisdiction over Youmans' pendant loss of consortium claim pursuant to 28 U.S.C. § 1367(a). Therefore, as to Count IX, the Court denies Defendants' motions to dismiss as to Genovese, George, and Van Tassel.

---

[3] Defendants cite *Metropolitan Dade County v. Reyes*, 688 So. 2d 311, 312 (Fla. 1996), for the proposition that a loss of consortium claim "is not a separate and distinct action separate from a spouse's claim." *Reyes* does not so hold. Rather, by holding that a loss of consortium claim requires its own notice separate from that of the underlying tort claim, *Reyes* in fact suggests that such a claim is a separate cause of action. *See id.* at 313.

**D.     Motion to Amend Complaint**

The Court notes that while the Defendants' Motions to Dismiss were pending, Plaintiffs filed a Motion to Amend Complaint (Doc. 31), to which Defendants responded in opposition (Doc. 38). Plaintiffs seek to amend their complaint to specifically allege any aggravation of Plaintiffs' respective pre-existing conditions as a special damage. Information regarding these prior injuries was unknown to Plaintiffs' counsel until on or about October 13, 2014. Recognizing that leave to amend should be freely given when justice so requires,[4] the Court will grant Plaintiffs' Motion to Amend Complaint.

**IV.    CONCLUSION**

It is hereby **ORDERED AND ADJUDGED**:

1. Defendant Van Tassel's Motion to Dismiss (Doc. 5) is **GRANTED** as to Count VII and **DENIED** as to Counts VI and IX.

2. Defendant George's Motion to Dismiss (Doc. 9) is **GRANTED** as to Count VII and **DENIED** as to Count IX.

3. Defendant Gore's Motion to Dismiss (Doc. 13) is **GRANTED**.

4. Defendant Genovese's Motion to Dismiss (Doc. 17) is **GRANTED** as to Count VII and **DENIED** as to Count IX.

5. Count VII of Plaintiffs' Complaint is **DISMISSED** in its entirety and Count IX is **DISMISSED** as to Defendant Gore.

---

[4] *See* Rule 15(a), Fed. R. Civ. P.

6. Plaintiffs' Motion to Amend Complaint (Doc. 31) is **GRANTED**. Plaintiffs are granted leave to file an Amended Complaint on or before December 17, 2014.

**DONE AND ORDERED** in Tampa, Florida on December 3, 2014.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any