UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL BRATT and MARJORIE
YOUMANS,

    Plaintiffs,

v.                                                            Case No: 8:13-cv-3210-T-36AEP

LOUIS GENOVESE, STEVEN GEORGE,
KENNETH VAN TASSEL and JOHN
GORE,

    Defendants.
_____/

## **ORDER**

This matter comes before the Court upon the Defendants' Motion to Strike Expert Testimony of Arthur Young (Doc. 74), Plaintiffs' response in opposition, (Doc. 85), Defendants' Motion to Strike Testimony of Plaintiffs' Expert Witness, Larry Gibbs Turner (Doc. 75), and Plaintiffs' response in opposition (Doc. 84). The Court, having considered the motions, heard argument from counsel and being fully advised in the premises, will grant-in-part and deny-in-part Defendants' Motion to Strike Expert Testimony of Arthur Young and will grant-in-part and deny-in-part Defendants' Motion to Strike Testimony of Plaintiffs' Expert Witness, Larry Gibbs Turner.

    **I.    BACKGROUND**

Plaintiffs Michael Bratt and Marjorie Youmans allege in this action that Deputy George trespassed onto their private residential property without cause or reasonable suspicion of criminal activity. *See* Doc. 41 at 2. As described in this Court's Order on the Defendants' Motions for Summary Judgment (Doc. 151), Deputy George was responding to a noise complaint made by the Plaintiffs' neighbors. After speaking to the neighbors, he approached the Plaintiffs' property, jumped over the four foot fence surrounding it and knocked on the door. Bratt opened the door,

upon which Deputy George informed him he was with the Hernando County Sheriff's Office and showed his badge. The events that happened next are in dispute. Bratt essentially accused Deputy George of trespassing, Youmans began to move towards Deputy George and Bratt put his arm across her chest to prevent her from approaching Deputy George. Deputy George yelled "domestic violence" and pushed open the door. Bratt attempted to shut the door, Deputy George tasered Bratt, and an altercation ensued. The encounter led to the arrest of both Plaintiffs. During the course of the arrest, Bratt and Deputy George suffered injuries that resulted in bleeding.

The parties dispute the circumstances surrounding the physical altercation between Bratt and Deputy George. Plaintiffs retained the services of Arthur Young, an expert in forensic serology, DNA analysis, and bloodstain analysis[1]. Young reviewed photographs of the bloodstains on the floor, on the walls, and throughout the house. He also reviewed photographs of Bratt and Deputy George taken after the incident. Plaintiffs argue that Young's testimony is essential because bloodstain analysis, including directional blood flow, time lapse, and drip and spatter patterns, are beyond the knowledge of the average juror, and are therefore appropriate for expert testimony.

Plaintiffs also retained the services of Larry Gibbs Turner to opine on the constitutionality of Deputy George's actions and whether they conformed to the requirements set forth in the Fourth Amendment to the United States Constitution regarding searches and seizures. Mr. Turner opined that Deputy George violated the Fourth Amendment because he did not have a warrant, probable cause or any other exceptions to the warrant requirement available to him to justify his trespass on the property. Plaintiffs argue that Turner's testimony is essential to explain the constitutional law

---

[1] The parties and case law interchangeably refer to bloodstain analysis as "blood splatter analysis," "blood spatter analysis," or "bloodstain pattern analysis."

and police procedure regarding entry onto private property, exigent circumstances permitting law enforcement to enter private property, and the legal standards of care applicable to law enforcement officers in these situations, which are beyond the knowledge of the average juror.

## II. LEGAL STANDARD

Rule 702 governs the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuiticals, Inc.*, the Supreme Court charged district courts with a "gatekeeping function" of "ensur[ing] that any and all scientific testimony or evidence is not only relevant, but reliable." 509 U.S. 579, 589 (1993). *See also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Accordingly, the admission of such testimony is a matter within the discretion of the district court. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1108 (11th Cir. 2005). In performing its gatekeeping function, the Court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The proponent of the challenged expert opinion testimony carries the burden of

proving its reliability by a preponderance of the evidence. *Id*. (citing *Daubert*, 509 U.S. at 592–93 & n. 10).

### III. DISCUSSION

#### a. Arthur Young

Plaintiffs disclosed Mr. Young as an expert on the subject of bloodstain pattern analysis. He made several opinions based on his review of photographs from the scene of the incident. Defendants argue that Mr. Young's opinions do not comport with the reliability threshold set forth in *Daubert* and request that his testimony be excluded from trial. Specifically, Defendants argue that merely viewing photographs is not a scientific methodology under *Daubert* and the assumption that all red or brown stains in the photographs is faulty due to lack of testing. Further, Defendants challenge three specific opinions: 1) Mr. Bratt bled a minimum of 15 minutes, Young Report[2] at 4; 2) Deputy George did not crawl to the front door to unlock it based on the drip pattern in the photographs, *id*. at 9, 11, 13; and 3) Deputy George's head did not strike the table. *Id*. at 12.

Mr. Young issued a 27-page report and sat for a deposition. He reviewed 40-50 photographs, 25 of which are in his report. Young Dep.[3] 61:19-21. He also examined and photographed the shorts Bratt was wearing on the date of the incident. Young Report at 15-22. Mr. Young did not visit the property where the incident occurred, Young Dep. 55:1-2; did not interview the Plaintiffs or any other witnesses, *id*. at 55:3-9; and did not remove samples from Bratt's shorts for analysis. *Id*. 68:23-69:2. Mr. Young did not conduct testing to confirm that the images in the photographs represented blood, or to determine whose blood it was. Young Dep. at 81:11-18, 162:17-25, 163:24-164:2. Young admits to several limitations in his opinions including that he is

---

[2] Guardian Forensic Sciences Case Review Report, Doc. 74-1.
[3] Deposition of Arthur Young, Doc. 131.

not able to determine that a substance is blood by looking at a photograph, *id*. at 163:5-9; testing is required to confirm the presence of blood, *id*. at 171:14-18; and his conclusions are limited by the quality of the photographs. *Id*. at 176:12-22.

Defendants argue both that Mr. Young is not qualified as an expert in bloodstain analysis and that his opinion is not scientifically reliable.

### i. *Mr. Young is sufficiently qualified*

The Court concludes that Mr. Young meets the minimum requirements to testify competently regarding bloodstain pattern analysis. *See* Young Dep. 23:2-9, 26-27, 45-49 (testimony that he attended two seminars for about two weeks on the subject of blood stain pattern analysis, he has a degree in pre-medical sciences and decades of experience, and he has testified in 80 criminal cases going back to 2002, at least once in federal court, and he is an expert in photography which aided his bloodstain pattern analysis in this case). [4] A review of his curriculum vitae indicates that he has the knowledge, skill, experience, and training necessary to be an expert in bloodstain analysis. *See* Doc. 74-1 at 28-35; *Correll v. Secretary Dept. of Corr.*, 932 F. Supp. 2d 1257, 1295 (M.D. Fla. 2013) (finding the expert qualified in blood spatter analysis based on her training and experience, not on her educational background). As to the reliability of Mr. Young's testimony, the Court will address the *Daubert* and Rule 702 factors below.

### ii. *The methodology is sufficiently reliable*

There is no evidence in the record that Mr. Young's methodology of observing fluids and stains in photographs as a means of identification has been tested, or has been subjected to peer review or publication. But location of bloodstains and blood spatter has been used to determine

---

[4] At oral argument, Defendants did not specifically address whether Mr. Young was qualified as an expert but instead focused on his proposed testimony.

the nature of a struggle or movement during a struggle or confrontation. *See, e.g., Correll*, 932 F. Supp. 2d at 1295 ("[S]he was—in a believable and effective way through blood spatter analysis—able to demonstrate to the jury and to the court exactly how [defendant] went about killing these four people."). Blood splatter experts sometimes rely on photographs of the scene to make their opinions. *See, e.g. Durst v. Rapelje*, 483 Fed. Appx. 36, 48 (6th Cir. 2012) (noting that blood spatter expert opinion and testimony was based on photographs rather than in-person examination and quoting expert to say "it's not unusual for me to only receive photographs, write a report based on it...."); *Harrington v. Richter*, 562 U.S. 86, 96 (2011) (noting appellant's reliance on statement from an expert in bloodstain analysis who relied on photographs to form an opinion regarding source of blood at a crime scene).

Young did no laboratory testing, and does not point to any other testing available regarding the technique of viewing photographs to determine blood spatter analysis. As to Young's opinion that Bratt bled for a minimum of fifteen minutes, he relied solely on his observation of the photographs and his personal experience with bleeding injuries and his work as an undergraduate student in a hospital. Young Dep. 109:24-110:11. He testified that there are no scientific studies regarding the length of time a person has been bleeding based on reviewing a photograph. *Id*. at 113:17-20.

Peer review and publication are not a requirement of admissibility. *Daubert*, 509 US at 593. But it increases the likelihood that the court can detect the substantive flaws in the methodology. *Id*. Although not dispositive it is relevant to assessing the scientific validity of a particular methodology. *Id*. Mr. Young has not published a study regarding bloodstain analysis, nor has he provided any peer reviewed literature, *i.e.*, texts or medical journals, supporting his opinions. Given that no testing has occurred on this particular data or on Mr. Young's

methodology of relying on the photographs, it follows that there is no known rate of error regarding this theory. The acceptance, or lack thereof, of a theory is an important factor in determining whether particular evidence is admissible. *Daubert*, 509 U.S. at 594. Mr. Young's opinions appear to be shared by scientists and other professionals who accept his theory or hold a similar opinion regarding bloodstain analysis based on a review of case law and legal publications available on the topic. *See*, *e.g*., Danny R. Veilleux, Annotation, *Admissibility in Criminal Prosecution of Expert Opinion Evidence as to "Blood Spatter" Interpretation*, 9 A.L.R. 5th 369 (originally published in 1993) and cases cited therein.

The Court finds that methodology is sufficiently reliable to permit Young to testify at trial. It appears that the testimony is the product of reliable principles and methods based on testimony produced in other courts regarding blood spatter analysis. *See*, *e.g. Durst*, 483 Fed. Appx. at 48; *Harrington*, 562 U.S. at 96. Generally, Young has applied the principles of methods and blood splatter analysis to the facts of this case after reviewing the depositions and other testimony regarding the two versions of the confrontation. He assessed the positioning of the two men during various parts of the struggle, inside and outside the home, reviewed the various injuries, their clothing, and drip patterns of the blood on their faces and on the floor, and determined whether he thought the patterns were consistent with the claims by both parties.

### iii.  *The testimony assists the trier of fact*

Defendants argue that Mr. Young's testimony will not assist the trier of fact because it does not fit to the facts of the case due to a "large analytical leap" between the facts and the opinion. Defendants cite *McDowell v. Brown* in support of this proposition. 392 F.3d 1283, 1299 (11th Cir. 2004) ("For example, there is no fit where a large analytical leap must be made between the facts and the opinion.").

7

Plaintiffs argue that Young's opinions are relevant to assisting the jury in resolving the disputed issues of fact regarding the confrontation between Bratt and Deputy George. The Court agrees. The blood spatter analysis as detailed in Young's report may assist the jury in understanding the significance of the blood spatters throughout the home and on both Bratt and Deputy George. The jury must decide which version of the confrontation it believes was more likely to have happened. Young's testimony is based on the facts available at the time, and photographs of the home, Bratt and Deputy George. He offers opinions on the positioning of Bratt and Deputy George during various stages of the incident. This information is clearly relevant and may assist the jury in resolving the disputed issues of fact regarding the physical confrontation between Bratt and Deputy George.

But the Court concludes that the third opinion – that it is implausible that Deputy George's head hit the table because the water bottle remained upright- is inadmissible. It is completely unrelated to blood splatter analysis, for which Mr. Young was retained and in which he is an expert. Otherwise, the Court concludes that Defendants' arguments go to the weight and sufficiency of Mr. Young's testimony and not to its admissibility. The Defendants can attack the weaknesses in Mr. Young's testimony during cross examination. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting *Daubert*, 509 U.S. at 596) ("'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'").

### b. Larry Gibbs Turner

Plaintiffs submit Larry Gibbs Turner as an expert in criminal law and police procedure. They offer his testimony to assist the jury in determining the legality of Deputy George's actions

with respect to his initial entry into Plaintiffs' property and the arrests following. They also offer his testimony to assist with determining whether Deputy George's entry onto Plaintiffs' property constitutes trespass, and whether probable cause existed to arrest Bratt for battery and to arrest Youmans for obstruction based on the events that took place.

To prepare his report and render his expert opinion, Turner reviewed the motion to suppress, the order granting defendant's motion to suppress, amended information, and information in the criminal case, and the amended complaint in this matter. Turner Dep.[5] at 141:10-22. He also read the jury instructions at the criminal trial. *Id*. at 145:2-5. At the time he rendered his report, Turner had not reviewed the transcripts of testimony from the motion to suppress hearing or any of the depositions from the criminal or civil case. *Id*. at 80:11-22. In rendering his opinions, Turner only took into account Bratt's version of the encounter. *Id*. at 82: 15-18. He "assumed certain facts and then applied what [he] considered to be the appropriate law to the facts[.]" *Id*. at 98:11-15. He has reviewed several other documents after having rendered his report, including the depositions of Eugenia Simpson, Deputy George, James White, and James White, III, an ACISS Patrol Supplemental Report, testimony by Deputy George in the criminal trial, Defendants' Motion to Strike Plaintiffs' Expert Witness Larry Gibbs Turner, Plaintiff's Response in Opposition, Richard M. Hough's Expert Report, and Philip Sweeting's expert report. *Id*. at 146-148.

Defendants seek to exclude the following opinions within Turner's report found on pages 8-12: 1) Deputy George trespassed on Plaintiffs' property, 2) Deputy George's entry onto Plaintiffs' property was constitutionally impermissible, 3) Plaintiffs' curtilage is "protected," 4) Plaintiffs possessed a reasonable expectation of privacy, 5) the reasonable person standard applies

---

[5] Deposition of Larry Gibbs Turner, Esq. Doc. 95-1.

to visitors to Plaintiffs' property, 6) the reasonable officer standard applies to a "knock and talk" in response to a noise complaint, 7) Deputy George did not conduct an acceptable "knock and talk," 8) Deputy George did not have probable cause that a crime had been committed at the Plaintiffs' property, 9) the complaint regarding an explosion at Plaintiffs' property did not provide probable cause, 10) a magistrate would not find probable cause to authorize Deputy George's entry into Plaintiffs' property, 11) an analysis regarding Deputy George's reasonable belief that there was an on-going emergency, 12) Deputy George had no exigent circumstances justifying entry, 13) Deputy George's entry onto Plaintiffs' property violated the Fourth Amendment, 14) Plaintiffs' house is protected by the Fourth Amendment, 15) Deputy George's presence was "unreasonable" and violated the Fourth Amendment, 16) Deputy George's arrest of Bratt was unreasonable and violated the Fourth Amendment, 17) Deputy George needs to present "credible evidence" as to why he entered the Plaintiffs' house to justify Bratt's arrest, 18) Deputy George's observation of Bratt touching Youmans is probably not battery under Florida law, 19) if a victim consented to touching, the battery charge will fail, 20) Deputy George' s entry into the Plaintiffs' home was an intrusion which he should not be allowed to justify, 21) the investigation of the noise complaint was not reasonable, 22) the approach to the Plaintiffs' house was not permissible or reasonable, 23) violation of Plaintiffs' Fourth Amendment rights were unreasonable, 24) encounter with Plaintiffs was unreasonable, 25) no probable cause existed that a crime had been or was being committed, 26) Deputy George did not have "anything that might even arguably be construed as an exigent circumstance," 27) Deputy George's actions violated the Plaintiffs' rights under the Fourth Amendment.

### i. *Turner is sufficiently qualified to testify*

Turner has been a licensed practicing Florida attorney since 1970, is a former prosecutor, and served as a state court judge in the Eight Judicial Circuit for two terms. He is a past president of the Florida Association of Criminal Defense Lawyers, and is an adjunct professor at the University of Florida College of Law. Doc. 75-1 at 19-21. Turner has appeared as an expert in criminal court on criminal procedure, but he admits that he has not opined as to whether a particular law enforcement officer violated the United States Constitution in other cases, and has not appeared in civil court. Turner Dep. at 33:2-8, 34:25-35:6.

### ii. *The methodology is not sufficiently reliable*

Although Turner's opinion lacks scientific methodology, non-scientific experts are held to the standard set forth in *Daubert*. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999); *see also Frazier*, 387 F.3d at 1262 ("The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony."). "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. Whether the *Daubert* factors are even pertinent to assessing reliability in a given case will "depend[ ] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. at 150 (internal marks omitted).

Although Turner has extensive experience in criminal law, he has not demonstrated an expertise in civil law. As one court stated "[i]t is not enough that a witness is qualified in some way related to the subject matter … the witness must have special knowledge about the discrete subject on which he or she is to testify." *Konikov v. Orange County*, 290 F. Supp. 2d 1315, 1317 (M.D. Fla. 2003). The expert witness may not simply draw conclusions, but must help the trier of fact understand the evidence and determine issues of fact by providing specialized knowledge. *Id*., *see also Montgomery v. Aetna Casualty & Surety Co.,* 898 F.2d 1537,

1541 (11th Cir. 1990) (a witness may not testify as to the legal implications of conduct; "the court must be the jury's only source of law"); *United States v. Hunter*, 373 Fed. Appx. 973, 978 (11th Cir. 2010) (same).

Here no testing is involved in Turner's opinion, he has not pointed to any peer review or publication of his theory regarding violation of the Fourth Amendment in warrantless entries into private residences, there is no identified known or potential rate of error, and Turner has not demonstrated general acceptance of his technique in the relevant legal community. Further, Turner relied almost exclusively on the pleadings in the criminal matter, *i.e.*, the motion to suppress, the order granting defendant's motion to suppress, amended information, and information. He was retained to issue an opinion on this civil matter, and should have reviewed these pleadings, and at least transcripts from the hearings before rendering his report. Turner testified at deposition that he has since reviewed some depositions and pleadings in this matter.

The Court is extremely concerned with the fact that Turner's report relied so heavily on the state court's Order Granting Defendant's motions to suppress (Doc. 75-1 at 3) and not the actual transcript of the hearing on the Defendant's motions to suppress or any evidence or testimony from this case. Although the facts in the criminal matter and this case are the same, the legal analysis and standards are very different. Therefore, Turner's reliance solely on the state court order is insufficient to meet the standard of "sufficient facts and data." Further, Turner's "expert opinions" are legal in nature and not factual. His testimony that Deputy George violated the Fourth Amendment with his actions, and acted unreasonably in light of the constitutional requirements for warrantless entry into a private citizen's home are legal conclusions.

### iii. *The testimony assists the trier of fact*

The report appears to improperly intrude on the province of the jury and the judge by purporting to offer legal conclusions, and effectively telling the jury what result to reach. But that in itself does not preclude Turner's testimony at trial, given that he has since reviewed additional material in this case, and can inform the jury of opinions as to the customs and practices of police officers concerning the issues in dispute. Ultimately, Turner's opinion may assist the jury in this case in understanding the evidence or determining a fact in issue. *See Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.*, 5:02-CV-58-OC-10GRJ, 2004 WL 3770571, at *4 (M.D. Fla. Aug. 20, 2004) ("[W]here, as here, the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the [] industry, his passing reference to a legal principle or assumption in an effort to place his opinions in some sort of context will not justify the outright exclusion of the expert's report in its entirety.") (citing *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001)).

Accordingly, the Court will strike the following opinions to which Defendants' object in Turner's report: #8-10, #12-20, #23, #25-27. The Court will permit Turner to testify at trial, but will limit the scope of his testimony to opinions about police customs and practices and prevailing standards that will assist the jury in determining whether Deputy George and the other Defendants violated the Fourth Amendment. Turner can testify as to the steps a reasonable officer would have taken to follow the law applicable to police officers in entering fenced, locked private property, as well as the information and circumstances that a reasonable police officer would have taken into account on that night. *See*, *e.g. Jimenez v. City of Chicago*, 732 F. 3d 710, 721-22 (7th Cir. 2013) (upholding the admission of expert testimony when he "testified only about reasonable

investigative procedures and ways in which evidence from other witnesses did or did not indicate departures from those reasonable procedures."). *See also Warfield v. Stewart,* 2:07-CV-332-FTM-33SP, 2009 WL 2421594, at *3 (M.D. Fla. July 31, 2009) ("Although experts may not testify to legal conclusions, testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.") (quoting *U.S. v. Johnston*, 322 Fed. Appx. 660, 667 (11th Cir. 2009)).

Further, the Court agrees with Plaintiffs that although the proposed expert testimony is potentially objectionable, many of the objections should be made when the testimony is presented at trial. There, the Plaintiffs can ask appropriate questions, permitting Turner to testify as to the prevailing law enforcement standard, and Defendants will have the opportunity to rigorously cross examine him. *See Samples v. City of Atlanta*, 916 F.2d 1548, 1551 (11th Cir. 1990) ) ("We find, however, that the questions leading up to this testimony, and the manner in which the expert answered the question, properly informed the jury that the expert was testifying regarding prevailing standards in the field of law enforcement"); *United States. v. Myers*, 972 F.2d 1566, 1577 (11th Cir. 1992) ("In light of the questioning and answers given, we find that, as with the testimony in *Samples*, Baker properly framed his opinion in accordance with prevailing police standards"); *Ayers v. Harrison*, 650 Fed. Appx. 709, 719 (11th Cir. 2016) ("The questions posed to the experts, and their answers, demonstrate that the experts were opining on prevailing law enforcement standards.").

**IV.  Conclusion**

Mr. Young is qualified as an expert in blood spatter analysis. He has sufficient training to testify competently about his observations regarding photographs from the scene of the incident.

Besides the opinion that Deputy George did not his head on the table, the Court will allow his report and testimony regarding the blood pattern analysis.

Mr. Turner is qualified as an expert in criminal law and procedure. He has sufficient experience and training to testify competently about police investigative techniques and procedure. But he may not offer legal opinions or instruct the jury on the law. He may only offer his expertise on law enforcement standards. The Court will be in a better position to determine the admissibility of various portions of his testimony in the context of direct and cross examination and will take up all remaining objections at that time.

Accordingly, it is hereby

**ORDERED**:

1. Defendants' Motion to Strike Expert Testimony of Arthur Young (Doc. 74) is **GRANTED-IN-PART** AND **DENIED-IN PART**.

**2.** Defendants' Motion to Strike Testimony of Plaintiffs' Expert Witness, Larry Gibbs Turner (Doc. 75) is **GRANTED-IN-PART AND DENIED-IN PART.**

**DONE AND ORDERED** in Tampa, Florida on December 12, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any