UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL BRATT and MARJORIE
YOUMANS,

     Plaintiffs,

v.                                    Case No: 8:13-cv-3210-T-36AEP

LOUIS GENOVESE, STEVEN GEORGE,
KENNETH VAN TASSEL and JOHN
GORE,

     Defendants.

_____/

## **O R D E R**

This matter comes before the Court on the Plaintiffs' Motion for New Trial (Doc. 323) and

Defendants' response in opposition (Doc. 327).  In the motion, Plaintiffs contend that the Court

committed six separate errors which warrant a new trial.   The Court, having considered the motion

and being fully advised in the premises, will deny Plaintiffs' Motion for New Trial.

### I.     BACKGROUND

In general, this case involves claims of excessive force by law enforcement officers brought

pursuant to 28 U.S.C. § 1983.  It is undisputed that Plaintiff Michael Bratt and Defendant Deputy

Steven George engaged in a physical altercation during Bratt's arrest in December 2009, which

resulted in severe injuries to Bratt and minor injuries to Deputy George. On December 26, 2009,

Hernando County Fire Rescue arrived at Bratt's residence to aid Deputy George. Walter Wagner

was the primary paramedic at the scene. Wagner testified in the criminal proceedings on two

occasions regarding what he did and observed on the night of Bratt's arrest, once in a deposition

and again at Bratt's trial. *See* Doc. 232-1 at 43:19-44:25; 45:1-46:25. Plaintiffs disclosed Wagner

as a possible witness for trial. *See* Docs. 223-4 at 9, 192-4 at 9. Defendants attempted to take

Wagner's deposition on four occasions. On two of those occasions they could not obtain or confirm service prior to the deposition date. On one occasion Defendants rescheduled the deposition pursuant to Plaintiffs' counsel's request. And on the last occasion, Wagner failed to appear. *See* Docs. 240-1- 240-4. It is unclear whether Plaintiffs (or Defendants) later attempted to set Wagner's deposition which would have provided Defendants' counsel an opportunity to cross-examine Wagner on his testimony. On September 30, 2015, Defendants listed Walter Wagner as a witness on their witness list. Doc. 140-1 at 3.

In November 2015, Wagner contacted Plaintiffs' counsel and indicated that he wanted to tell the "whole truth" of what he observed the night of Bratt's arrest. Doc. 232 at 1. On November 18, 2015, Plaintiffs' counsel obtained a sworn statement from Wagner ("Wagner's Sworn Statement") in which Wagner indicates that he witnessed two deputies throw Bratt out of the police vehicle. Bratt landed face down on the pavement, his arms and feet were bound. Doc. 232-1 at 32:7-33:19. Wagner also indicates in his sworn statement that one of the deputies said sarcastically that Bratt "fell." *Id.* at 35:15-24. Deputies William Peterson, John Gore, and Louis Genovese all testified that Bratt fell out of the vehicle. Doc. 57-17[1] at 15:4-20, 17:18-18:3; Doc. 57-4[2] at 27:3-14; Doc. 57-2[3] at 32:2-24, 33-10:17. Wagner also testified that he observed "sputum" on Deputy Genovese's forehead when he decontaminated him at the scene.

On February 7, 2018, Plaintiffs' counsel learned that Wagner died on December 26, 2017. Docs. 232 at 2; 232-2. Plaintiffs' counsel did not notify Defendants of the existence of Wagner's Sworn Statement until February 8, 2018, three weeks prior to the trial date and over two years after taking the statement. Plaintiffs' counsel also did not inform the Court of the statement in the

---

[1] Deposition of William Peterson.
[2] Deposition of John Gore.
[3] Deposition of Louis Genovese.

January 23, 2018 Amended Pretrial Statement.[4] *See* Doc. 223. Plaintiffs filed their Motion to Admit the Sworn Statement of Walter Wagner into Evidence, for Expedited Consideration Thereof, and Incorporated Memorandum of Law ("Motion to Admit"), Doc. 232, which this Court denied, Doc. 268. In the Order denying the Motion to Admit, the Court concluded that the Plaintiffs did not timely disclose Wagner's Sworn Statement, it contained double hearsay, and its trustworthiness was questionable; therefore, it could not be admitted as substantive evidence at trial. *Id.* at 10. The Court specifically instructed the parties that Wagner's Sworn Statement could be used for impeachment purposes only, subject to the appropriate evidentiary foundation being established. *See id.*

In Wagner's Sworn Criminal Trial Testimony and Sworn Handwritten Statement, he stated that he cleaned spit from Genovese's face. The testimony varies regarding the location of the spit, including the middle of his forehead, to the side of his face closer to his hairline, and on his ear. Plaintiffs' counsel spent significant trial time discussing the location of the spit to attack Genovese's credibility. Plaintiffs attempted to submit the aforementioned evidence to impeach Genovese, over the Defendants' objection. But the Court sustained the objection.

The parties also disputed the testimony of Dr. Daniel Buffington. Dr. Buffington is an alcohol expert, retained by the Defendants to testify regarding Bratt's blood alcohol level during the time of his arrest. Plaintiffs filed a Motion in Limine To Preclude Testimony Regarding Retrograde Extrapolation and Commonly Known Effects of Alcohol. Doc. 111. Plaintiffs sought to exclude any testimony about a retrograde extrapolation process or other testimony which sought

---

[4] The Amended Pretrial Statement also listed Wagner's deposition related to Bratt's criminal trial on November 29, 2010, for impeachment purposes only. Doc. 223-2 at 24. Defendants included a "[s]worn handwritten statement by Firefighter Walter Wagner dated 12/31/2009" on their Exhibit List. Doc. 223-3 at 4. Both Plaintiffs and Defendants listed Wagner as a witness. Docs. 223-4 at 9; 223-5 at 3.

to extrapolate or estimate Bratt's blood alcohol level or the effects on his blood alcohol content on his behavior at the time of his arrest. *Id.* at 1. The Court denied the Motion in Limine. Doc. 181.

At trial, Plaintiffs again objected to this testimony arguing that Dr. Buffington intended to improperly testify regarding Bratt's aggressiveness and behavior including anger and emotional mood swings, as opposed to merely his blood alcohol level. Doc. 319 at 14:1-26:1 (Trial Tr. May 22, 2018). They also argued that Dr. Buffington improperly characterized Bratt's blood alcohol level as "in excess of the state limit" which they argue is error by omission. *See id.* Plaintiffs further argued that the limit pertains to a person's legal limit to drive, not just a general limit for alcohol consumption. *See id.* Defendants' counsel represented that they had no intention to elicit testimony regarding Bratt's behavior at the time of the arrest, only his blood alcohol content and the range of behavior associated with those levels of intoxication. *Id.* at 30:15-32:1.

## II.     LEGAL STANDARD

Plaintiffs move for a new trial pursuant to Rule 59 which provides that:

> (1) The court may, on motion, grant a new trial on all or some of the issues—
> and to any party—as follows:
> (A) after a jury trial, for any reason for which a new trial has heretofore
> been granted in an action at law in federal court.

Fed. R. Civ. P. 59(a)(1)(A). Any such motion must be filed no later than 28 days after entry of the judgment. Fed. R. Civ. P. 59(b). And the court may order a new trial on its own initiative, so long as it does so not later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(d).

The Supreme Court has noted that a party may seek a new trial on grounds that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

Further, Rule 61 states the following regarding new trials:

> Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61. To demonstrate that an evidentiary ruling affected its substantial rights, the movant "bears the burden of proving that the error probably had a substantial influence on the jury's verdict." *Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1353 (11th Cir. 2007).

The Eleventh Circuit has consistently held that a district court may exercise its discretion in deciding whether to grant a new trial based on prejudicial conduct. District courts have this discretion because "the trial judge who is actually present at trial, ... [is] best able to determine whether the proceeding has been 'contaminated' by events outside the jury's control." *McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990) (quoting *Williams v. City of Valdosta*, 689 F.2d 964 (11th Cir. 1982)). This holds true particularly "where the interest of substantial justice is at stake...." *Christopher v. Florida*, 449 F.3d 1360, 1367 (11th Cir. 2006).

### III.    DISCUSSION

Plaintiffs argue that the Court committed six specific errors at trial. They contend that when the Court refused to allow them to use Wagner's Sworn Statement, Sworn Handwritten Statement and Sworn Criminal Trial Testimony to impeach Genovese during trial, it misapplied its own ruling on the Motion to Admit and misapplied the law on impeachment. They also object to defense counsel's statements at closing argument regarding the missing EMT witness, Genovese's credibility and Dr. Buffington's opinions, which they contend were prejudicial.

#### a.  Purported Error #1

Plaintiffs argue that the Court contradicted its ruling on the Motion to Admit, which permitted them to use Wagner's testimony for impeachment, by prohibiting counsel from

submitting Wagner's Sworn Statement to impeach Genovese. The Court's Order on the Motion

to Admit is clear, Wagner's Sworn Statement was admissible as impeachment evidence only,

subject to the appropriate evidentiary foundation being established, i.e., impeachment. Plaintiffs

appear to have misunderstood the Court's ruling to mean that they could use the evidence

substantively to contradict Genovese's testimony, which is not the same as impeachment.

Plaintiffs' counsel decided to discuss this testimony in opening statement based on this erroneous

interpretation, and he did so at his own peril. The Court will not revisit its analysis for denying

admission of Wagner's Sworn Statement given the extensive briefing on the issue, *see* Doc. 268,

and the Court's allowance of extended argument at trial. The Court finds no error.

### b. Purported Error # 2

Plaintiffs argue that during closing argument, defense counsel made an impermissible

missing witness argument. Plaintiffs' counsel complains that despite the Court's Order on the

Motion to Admit and Plaintiffs' counsel's promise in his opening statements that they would

present a disinterested witness, the Court refused to allow Wagner's Sworn Statement into

evidence. They argue that the fact that the jury never knew that Wagner died before the trial which

explains his unavailability,[5] compounds the Court's error. Plaintiffs further argue that defense

counsel received an unfair advantage when they argued that Plaintiff's counsel misled the jury by

promising testimony of a disinterested witness knowing that Plaintiffs could not respond.[6]

---

[5] The Plaintiffs' counsel in fact elicited testimony from another EMT, Salvatore Costa, regarding Wagner's unexpected death that occurred prior to trial. *See* Doc. 315 at 12:6-14 (Trial May 16, 2018).

[6] Specifically, defense counsel stated: "[d]o you really think that if you're going to slam a suspect into the pavement, you'd do it in front of an emergency room door? ...And you remember Plaintiffs' Counsel told you in opening that there was some EMT person at the hospital that witnessed Mr. Bratt being thrown to the pavement. We didn't hear from any kind of witness about that." Doc. 325 at 31:5-18 (Trial Tr. May 25, 2018).

"A district court has wide discretion to regulate the scope of argument. For reversible error to be found in closing argument, the challenged argument must be plainly unwarranted and clearly injurious." *Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d 1261 (11th Cir. 2008) (citations omitted).

The Court did not commit error in its ruling. Plaintiffs rely on case law out of the Ninth Circuit and Florida state courts which are not binding on this Court. Further, Plaintiffs did not contemporaneously object to the defense counsel's closing argument. A party's failure to make a contemporaneous objection to purportedly improper argument is "troublesome," but the party does not forfeit the ability to seek a new trial based on an improper closing argument where the interest of substantial justice is at stake. *McWhorter*, 906 F.2d at 677; *Christopher*, 449 F.3d at 1366.

When no objections are raised, the standard for a new trial is plain error, but a finding of plain error "is seldom justified in reviewing argument of counsel in a civil case." *Id*. (quoting *Woods v. Burlington Northern R.R. Co*., 768 F.2d 1287, 1292 (11th Cir. 1985) (per curiam), *rev'd on other grounds*, 480 U.S. 1 (1987)).

> The philosophy underlying this rule is aptly summarized in *Woods*:
>
> Requiring timely objection prohibits counsel from "sandbagging" the court by remaining silent and then, if the result is unsatisfactory, claiming error. Second, there are a number of good reasons why skilled trial counsel may make a tactical decision not to object to improper argument: (1) an argument that looks highly improper in a cold record may strike counsel as being wholly lacking in effect; (2) because of the 'chemistry' of the courtroom counsel may think that the improper argument may offend and in effect backfire; and (3) the improper argument may open the door to a response that will be of more value than a sustained objection.

*Woods*, 768 F.2d at 1292 (citations omitted).

The purported error and statement at closing does not provide a basis for a new trial in this case. *See cf. Wilson v. NHB Indus., Inc*., 219 Fed. Appx. 851, 853–54 (11th Cir. 2007) ("Given that the jury heard the parties' closing arguments after they had already been instructed on the law,

and where the improper comments occurred during [Plaintiff's] counsel's rebuttal when [Defendant] had no further opportunity to speak to the jury, and where the comments constituted a misstatement of the law which went directly to the very issues contested in the case, the Court finds that counsel's improper comments, especially without a curative instruction, cast an impermissible taint over the jury's verdict.").

Considering the totality of these trial circumstances, the Court concludes that: (i) it did not err; and (ii) if it did err, defense counsel's fleeting references to the missing witness before Plaintiffs' counsel gave his rebuttal argument and before the Court charged the jury, did not affect Plaintiffs' substantial rights at trial. Even *Christopher*, a case involving excessive force and a plaintiff's closing statement found to be "in *direct* contravention of the [district] court's earlier qualified immunity order," 449 F.3d at 1366 (emphasis added); does not dictate that a district court must grant a new trial when improper argument occurs during a closing.

### c. Purported Error #3

Plaintiff argues that defense counsel impermissibly vouched for Deputy Genovese's credibility when he stated that

> [Bratt] wasn't hogtied. And so, I can submit to you that Deputy Genovese, a trustworthy police officer, would never have intentionally tried to throw [Bratt] in the screen by slamming on his brakes. You heard him testify. He's a credible witness and he said he never did it.

Doc. 325 at 12:7-13 (Trial Tr. May 25, 2018). Plaintiff relies on the standards articulated in the Rules Regulating the Florida Bar which states that "a lawyer must not... in trial, state a personal opinion about the credibility of a witness unless the statement is authorized by current rule or case law." R. Reg. Fla. Bar 4-3.4(e).[7]

---

[7] Although highly persuasive, the decisions of the Supreme Court of Florida are not binding upon the United States District Court for the Middle District of Florida in interpreting the Rules Regulating the Florida Bar because "this court must retain the right to interpret and apply the

Generally, attempts to bolster a witness by vouching for his or her credibility are improper "if the jury could reasonably believe that the [attorney] indicated a personal belief in the witness' credibility." *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991). The Court must examine whether: (1) the attorney explicitly personally assured the witness' credibility, or (2) the attorney implicitly vouched for the witness' credibility by implying that evidence not presented to the jury supports the witness' testimony. *United States v. Castro*, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing *Sims*, 719 F.2d at 377).

When an attorney voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not entirely improper. *See United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted). Also, an attorney may reply to remarks, comments or assertions made by defense counsel. *See United States v. Young*, 470 U.S. 1, 11–13 (1985).

The defense counsel's reference to Genovese being a "trustworthy police officer" and a "credible witness" during closing argument was not improper vouching. *See United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991) ("The prohibition against vouching does not forbid prosecutors from arguing credibility ... it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury."). And the record does not support that defense counsel was suggesting to the jury that he was aware of information unavailable to

---

rules in a federal setting." *Bochese v. Town of Ponce Inlet*, 267 F. Supp. 2d 1240, 1243 (M.D. Fla. 2003) (quoting *In re Disciplinary Proceedings of John Doe*, 876 F.Supp. 265, 269 n. 5 (M.D. Fla. 1993).

them which would tend to support the truthfulness of Genovese's testimony. *See cf. United States v. Lamerson,* 457 F.2d 371, 372 (5th Cir. 1972)[8] (when attorney's statement could be construed by the jury as implying that he has additional reasons for knowing a witness' veracity, "which reasons are not known to the jury, such comment is no longer mere indiscretion but constitutes reversible error.").

The defense counsel's closing argument spans thirty-five pages of the trial transcript, under these circumstances one sentence allegedly vouching for Genovese's credibility is insufficient to constitute error. *See* Doc. 312 at 56-91 (Trial Tr. May 25, 2018). To the extent that it was error, it was harmless and not plainly unwarranted or clearly injurious as to justify a new trial. *See Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261 (11th Cir. 2008). Further, the Court sufficiently dispelled any suggestion of vouching by instructing that the jury should keep in mind that "anything the lawyers say is not evidence and isn't binding on you." Doc. 303 at 1. Plaintiffs did not request a cautionary instruction in addition to these instructions. *See Wajcman v. Inv. Corp. of Palm Beach*, 07-80912-CIV, 2009 WL 10667881, at *9 (S.D. Fla. Sept. 11, 2009) ("It is worth noting that defense counsel evidently did not find these statements so prejudicial as to request a cautionary instruction.").

Ultimately, the jury appears to have found Deputy Genovese's testimony more credible, and the Court is not permitted to second guess that determination. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Upon review of the evidence presented at trial, the arguments of counsel during closing arguments,

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

and the Court's instructions to the jury, the Court concludes that a new trial is not warranted. *Accord United States v. Gibson,* 633 Fed. Appx. 713 (11th Cir. 2015) (holding that prosecutor's comment during closing argument, that law enforcement officers' testimony was "worthy of belief," was a fair response to defense counsel's claim that the officers fabricated testimony about defendant's statements regarding possession of a handgun). *See also U.S. v. Calderon*, 127 F. 3d 1314, 1336 (11th Cir. 1997) (holding that five statements during three-week trial were not so prejudicial as to require a new trial).

### d. Purported Error #4

Plaintiffs argue that the Court erred when it denied admission of Wagner's Handwritten Sworn Statement and Sworn Criminal Trial Testimony. Plaintiff sought to introduce the evidence for purposes of contradicting Genovese's testimony regarding the location of the sputum which Bratt spit on Genovese from the back of the police vehicle. Both documents were listed as trial exhibits.[9]

Genovese testified that the spit landed near his ear lobe on the right side of his face and towards the top of the right side of his forehead. Doc. 315 at 55:13-15 (Trial Tr. May 16, 2018). Wagner's Criminal Trial Testimony stated that he removed spit from the center of Genovese's forehead. Doc. 323-1 at 609:18-21. Wagner's Handwritten Sworn Statement, which the Hernando County Sheriff's Office obtained, states that Wagner removed spit from "the middle region" of Genovese's forehead. Doc. 323-2. [10]

---

[9] Defendants argue that Plaintiffs never designated Wagner's criminal trial deposition and that they were surprised by Plaintiffs attempt to admit it at trial. Doc. 327 at 11. *But see* Doc. 223-2 at 24 (Plaintiff's Exhibit List #160).

[10] At the deposition in the criminal case, Wagner testified that he observed a "large amount of spewdom [sic] probably two centimeters mid-forehead" right in the center. Doc. 293-1 at 10:3-12:2.

11

During cross examination, Plaintiffs sought to introduce the disputed evidence. The testimony, in all of its variations, indicates that there was spit on Genovese.[11] Part of Plaintiffs' theory of the case was to raise doubt regarding Genovese's testimony that Bratt, while in the backseat of the police car, hogtied, and separated by a Plexiglass divider, spit on Genovese's forehead while he was driving. *See* Doc. 323 at 15.

They now argue that the Court's rationale in its Order on the Motion to Admit, i.e., that the testimony could be used for impeachment purposes only, should have applied to these two exhibits. But as stated earlier, the Court's use of the term impeachment in its Order is not consistent with Plaintiffs' attempt to contradict Genovese at trial with these documents, documents that Genovese did not author and of which he had no knowledge. The Court ruled as it did because the Defendants could not cross-examine Wagner as to the statements. This rationale is consistent with the analysis in the Order on the Motion to Admit.

Plaintiffs attempted to admit Wagner's Written Sworn Statement and Criminal Trial Testimony under Rule 804. Rule 804(b)(1) provides that the prior testimony of an unavailable declarant is not excluded by the rule against hearsay if: A) "[the testimony] was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one;" and B) "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1).

---

[11] The Plaintiffs' counsel specifically asked Genovese "[i]f that -- Mr. Wagner swore that, in fact, the only spittle that he saw looked like blood, mucous and may have been spittle was on the center of your forehead, the only thing he found when he stopped that, that would be an error? That would not be consistent with what you just said?" and Genovese answered: "[i]t's not consistent with what I said." Doc. 315 at 63:12-18 (Trial Tr. May 16, 2018).

Here, there is no dispute that Wagner is deceased and thus unavailable, as defined in Rule 804(a)(5)(A). Nor is there any question that the relevant testimony was given in a trial, by a witness testifying under oath and subject to cross-examination. Admissibility pursuant to the prior testimony exception hinges on whether the State of Florida qualifies as a "predecessor in interest" of the Defendants, and, if so, whether the State of Florida had "an opportunity and similar motive" to develop their testimony as Defendants did in this case. Fed. R. Evid. 804(b)(1).

The Eleventh Circuit has yet to weigh in on what qualifies as a "predecessor in interest" for purposes of this rule, s*ee Mamani v. Berzain*, 07-22459-CIV, 2018 WL 888849, at *2 (S.D. Fla. Feb. 14, 2018) (*citing Hearn v. McKay*, 603 F.3d 897, 904 (11th Cir. 2010)). The other circuits generally focus on "opportunity and similar motive." *Id.*[12] In *United States v. Dinapoli,* the court held that: "[t]he test must turn not only on whether the questioner is on the same side of the same issue at both proceedings, but also on whether the questioner had a substantially similar interest in asserting that side of the issue." 8 F. 3d 909, 912 (2d Cir. 1993). The Court also noted that "[i]f a fact is critical to a cause of action at a second proceeding, but the same fact was only peripherally related to a different cause of action at a first proceeding, no one would claim that the questioner had a similar motive at both proceedings to show that the fact had been established (or disproved)." *Id.*

In this case, the State of Florida charged Bratt with three counts of battery against law enforcement officials including Genovese. Doc. 323-3. Plaintiffs argue that the State and Defendants therefore had similar motive because the "State wanted to prove that Bratt was guilty

---

[12] The cases cited by Plaintiffs are neither binding on this Court nor persuasive; the facts are distinguishable. *See* Doc. 323 at 19 (citing *Volland-Golden v. City of Chicago*, 89 F. Supp. 3d 983 (N.D. Ill. 2015); *Carpenter v. Dizio*, 506 F. Supp 1117 (E.D. Pa. 1981), *Lisker v. City of Los Angeles*, 2012 WL 3610134 (C.D. Cal. Aug. 20, 2012).

of resisting an officer, and Genovese wanted to prove the force applied to Bratt was reasonable in light of his continued resistance through his spitting." Doc. 323 at 18. This motive is not sufficiently similar, particularly since the Plaintiffs sued the Defendants in their individual capacities only.

Lastly the State did not have an opportunity to cross-examine Wagner in a manner that maintains the spirit of Rule 804. At the time Wagner testified at the criminal trial, he had not yet revealed what he observed when Bratt was removed from the law enforcement vehicle. The State therefore had no reason to ask additional questions regarding what he observed after he treated the deputies, or to question his credibility since he was testifying favorably on their behalf.

The Court did not commit error in denying admission of Wagner's Handwritten Sworn Statement and Sworn Criminal Trial Testimony to impeach Genovese.

### e. Purported Error #5

Plaintiffs complain that Defendants' counsel exploited Dr. Buffington's "improper and prejudicial" testimony regarding Bratt's behavior at the time of his arrest in his closing argument. Plaintiff cites *Christopher*, 449 F. 3d at 1367, for the proposition that these statements substantially affected Plaintiffs' rights.

During closing argument, Defendants' counsel stated the following, without objection from Plaintiffs' cousnel:

> But as Dr. Buffington testified, Michael Bratt's level of intoxication would have caused him to act with anger or rage at the time of this incident. So[,] see it does matter that Michael Bratt was intoxicated because it explains his behavior this night, especially his behavior toward Deputy George.

Doc. 325 at 64:15-21 (Trial Tr. May 25, 2018).

The closing arguments were permissible comments on the evidence admitted at trial. Otherwise, the Defendants' counsel's statements did not substantially affect Plaintiffs' rights. If it

was error, it was harmless given the extensive testimony at trial regarding the range of behavior associated with different levels of alcohol consumption and Dr. Buffington's caveat that each individual case will vary. *See* Doc. 320 30:1- 35:1 (ultimately concluding that Bratt's alcohol content level combined with the medication he took that day would result in impairment). *Cordell v. Pac. Indem. Co.,* 380 Fed. Appx. 942, 945 (11th Cir. 2010) (citing *Commercial Credit Equip. Corp. v. L & A Contracting Co., Inc*., 549 F.2d 979, 981 (5th Cir. 1977)) ("[A]ttorneys can make reasonable inferences from the evidence presented at trial in making their closing arguments.").

Plaintiffs also quickly note that 1) the Defendants' counsel reneged on their representation to this Court that Dr. Buffington would not make "improper" deductions, 2) the tables upon which Dr. Buffington relied were "rank hearsay" that the Court should not have allowed into the trial, and 3) the Defendant improperly injected the "alcoholic" label on Bratt and made intoxication a central theme of their defense. The Court is not persuaded by these arguments.

### f. Purported Error #6

Plaintiffs further object to Dr. Buffington's testimony as "fatally prejudicial" and misleading because he testified to a "legal limit for alcohol consumption." He specifically testified that Bratt's blood alcohol level at 2:00 a.m. on the night of the arrest was "two to three times the Florida legal limit." Doc. 320 at 28:11-21 (Trial Tr. May 23, 2018). Defendants' counsel further discussed this point in his direct examination when he asked Dr. Buffington if he understood that the case had "nothing to do with operating an automobile" and Dr. Buffington replied that he did. And he noted that his testimony was based on "medical data established from around the country." *Id.* at 29:10-13. Defendants' counsel later attempted to clarify the testimony by asking Dr. Buffington "in not considering any issues related to...intoxication for automobiles...what is your opinion as to what his blood alcohol content would have been at 2:00 a.m. when Deputy George

arrived at the scene?" and Dr. Buffington answered "[i]t would have been between .162 and .223...reflective of intoxication." *Id*. at 29:13-30:1.

Since there is no basis for a legal limit for alcohol consumption outside of operating a motor vehicle, Plaintiffs argue that the testimony is prejudicial by implying that Bratt exceeded a legal limit which does not exist. But, viewing the testimony in light of the entire context of Dr. Buffington's testimony at trial, the Court finds no error. The Court directed counsel to rephrase the questions, and Plaintiffs' counsel did not object to the rephrasing. *See id*. at 28:22-29:2. Defendants' counsel clarified that he was not soliciting evidence regarding Bratt's ability to drive, only his intoxication level. No error occurred here. To the extent admitting the evidence was error, it was harmless.

Plaintiffs also argue that Dr. Buffington impermissibly testified as to Bratt's actual actions at the time of his arrest, as opposed to potential behavior of someone with the same level of intoxication. During argument before the Court and outside the presence of the jury, Defendants' counsel stated that it would not present evidence of Bratt's actual actions at the time of his arrest through Dr. Buffington. Doc. 319 at 30:15-16 (Trial Tr. May 22, 2018). At trial, Dr. Buffington discussed a demonstrative exhibit labeled "Clinical Signs and Symptoms of Alcohol Intoxication" which identified anger, boisterousness, emotional swings, and over-expression as behavior consistent with the range of blood alcohol content identified for Bratt at the time of his arrest. *See* Doc. 323-4. Dr. Buffington also testified that as a person consumes more alcohol, and reaches the excitation phase, that is when they exhibit "aggressive behavior, belligeren[ce], boisterousness[.]" Doc. 320 at 31:4-7. He also testified that the behaviors and symptoms do not appear in every case or every individual. *See id*. at 33: 11-34:1.

Plaintiffs object to Dr. Buffington stating that he knew the effect that alcohol had on Bratt, which contravened this Court's order and defense counsel's representations. But Plaintiffs' counsel invited that statement when he specifically demanded that Dr. Buffington answer "yes or no" to the question: "[d]o you know what the effect of alcohol is on Mr. Bratt?" *Id*. at 51:17-20. Therefore, Plaintiffs cannot now object to the question. *See Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC,* 684 F.3d 1211, 1231 (11th Cir. 2012) ("A party that invites an error cannot complain when its invitation is accepted.")

## IV.    CONCLUSION

The Court afforded all parties a fair trial. The Court was conscious of the fact that lead counsel for both the Plaintiffs and Defendants underwent significant medical challenges and made every accommodation possible. Plaintiffs' counsel changed very late in the litigation, and lead counsel for Defendants required a continuance right before the earlier trial date. Nonetheless, in an abundance of caution, throughout the proceedings the Court gave substantial leeway to the parties and permitted them the opportunity to present any and all arguments and case law in support of their respective cases. Over two weeks, including several late evenings, the parties presented argument regarding evidentiary matters, scheduling, and jury instructions.

Here, the Court concludes that neither separately nor collectively do the purported errors render the trial fundamentally unfair for Plaintiffs. Any error that occurred was harmless, as it did not affect Plaintiffs' substantial rights. *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

The Court, having reviewed the Motion, response, transcripts, and the entire record, concludes that a new trial is not warranted.

**Accordingly, it is ORDERED**:

1.      Plaintiffs' Motion for New Trial (Doc. 323) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on October 19, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any